**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eugenia M Wright,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-17-02624-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Eugenia M. Wright's ("Wright") appeal from the Social Security Commissioner's ("Commissioner") denial of her applications for disability, disability insurance benefits, and supplemental security income. (Docs. 1, 18.)

**I.    Background**

    **A. Procedural History**

Wright "protectively filed an application for a period of disability, disability insurance benefits, and supplemental security income" in December of 2010. (Doc. 18 (citing AR 236, 432–33, 439–40, 441–48.)) In an initial determination, the Commissioner denied these claims. *See* AR 264–67. Wright subsequently requested, and the Commissioner denied, reconsideration of the initial determination. AR 271–79.

Wright then requested a hearing before an Administrative Law Judge ("ALJ"), who took testimony from Wright and a vocational expert. AR 124–66, 280–82. On November 9, 2012, the ALJ denied relief. AR 233–48. Wright requested, and received, review by the Appeals Council, who reversed and remanded for additional administrative

proceedings. AR 254–56, 345.

On remand, the ALJ held two hearings and, on February 25, 2016, denied Wright's request for benefits. AR 14–34, 47–123. Wright requested, and was denied, review by the Appeals Council. AR 1–5, 429. Wright then timely appealed to this Court.

**B. The ALJ's February 25 Decision**

In its February 25, 2016 decision, the ALJ determined that Wright was not disabled. AR 14–34. In doing so, the ALJ utilized the Social Security Act ("SSA") five-step sequential process for determining whether an individual is disabled. AR 18. At the first step, the ALJ determined that Wright had not engaged in substantial gainful activity since October 29, 2010. AR 20. At the second step, the ALJ determined that Wright suffered from four severe impairments: "[(1)] complex regional pain syndrome (primarily of the left upper extremity); [(2)] fibromyalgia; [(3)] depressive disorder with anxious distress; [and (4)] bipolar disorder." AR 20. At step three, the ALJ found that none of Wright's impairments or a combination thereof "equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." AR 21–22. Prior to step four, the ALJ determined that Wright had the residual functional capacity to perform light work, and as relevant, found that Wright can "stand up to four hours, and walk up to four hours, of an eight-hour workday" and "can occasionally handle, finger, feel, and can never push or pull, with the left arm." AR 23–24. At steps four and five, the ALJ determined that Wright was capable of working in her prior profession as a charge nurse or working as a storage rental clerk, a router, or a telemarketer. AR 31–33. The ALJ concluded that Wright had not been disabled from October 29, 2010 to February 25, 2016.

In making the relevant medical determinations, the ALJ relied on opinions provided by Dr. Donald Fruchtman, D.O. ("Dr. Fruchtman"), who served as a consultative neurologist. AR 29–30. Dr. Fruchtman provided two residual functional capacity analyses on July 9, 2015. The first was a check-box-based analysis in which Dr. Fruchtman indicated, as relevant, that Wright could stand for four hours a day, walk for

four hours a day, and never use her left hand for pushing, pulling, or overhead reaching, but could occasionally use that hand for reaching in all other manners and for handling, fingering, and feeling. AR 2520–21.

In the second opinion, provided in narrative form, Dr. Fruchtman explained that Wright could frequently reach, however, such reaching could not be unlimited as Wright:

> occasionally has to use her left hand, and that is definitely restricted. She should do her handling, fingering and feeling frequently, as opposed to unlimited for the same reason. Although she will be using her right hand the majority of the time, she still needs her left hand for most positions. It is difficult to have a position and be able to use just one hand. Therefore, handling, feeling fingering and reaching are limited to frequently based on the right hand. Left hand is never for reaching, handling, feeling and fingering because of the ultra-sensitivity and the fact that the median ne[rve] is definitely highly sensitive.

AR 2532–33. Dr. Fruchtman also opined that Wright could "stand and/or walk" for "4 hours and probably not more than an hour or two at any one time" in an 8-hour workday. AR 2531.

The ALJ determined that "the first opinion is most consistent with record evidence, and is assigned great weight," while the "second opinion is assigned partial weight, but is afforded less weight than the first." AR 30. In explaining its conclusion, the ALJ noted that despite "longstanding Agency policy that narrative explanations are preferred as compared with response[s] in check-box forms" where "[a]ll things [are] equal," it gave greater weight to the check-box form because all things were not equal. AR 29. The ALJ credited the first opinion over the second opinion for three reasons.

First, the ALJ found that the second opinion was internally inconsistent, making it less reliable, because despite stating that Wright could never use her left hand for "reaching, handling, feeling and fingering," the same opinion indicated that Wright "occasionally has to use her left hand" and "still needs her left hand for most positions." AR 30 (citing AR 2533).

Second, the ALJ found that a narrative description of clinical findings in the

- 3 -

1 second opinion more closely accorded with the conclusions in the first opinion than with the narrative conclusions in the second opinion. AR 30. Specifically, the ALJ cited Dr. Fruchtman's clinical findings in the second opinion that Wright: (1) can move her left hand; (2) can touch her left thumb to all her fingers; (3) only suffered from slightly diminished left wrist range of motion; (4) exhibited "5/5 muscle strength bilaterally, 5/5 right hand grip strength, and 4/5 left hand grip strength, and normal deep tendon reflexes"; and (5) "demonstrated normal sensory examination, with increased sensitivity and some sensory deficits in the left hand." AR 30 (citing AR 2528–30).

Third, the ALJ found Wright's activities of daily life, in which she "is able to perform activities of self-care, prepare simple meals, and provide care for her daughter" demonstrated "use of her left hand" that is "more closely approximated by Dr. Fruchtman's first opinion." AR 30. Accordingly, because the ALJ found that the "first opinion [was] most consistent with the record evidence" the ALJ assigned greater weight to it than to the second opinion. AR 30.

### C. Vocational Testimony

The vocational expert testified that an individual who could "stand and walk no more than four hours" and who could only use their left arm for "an assistance purpose in rare instances, but generally could not perform occasional reaching, handling, or fingering with the left upper extremity" could not perform any work. *See* AR 90–91.

## II. Legal Standard

The Court must affirm the ALJ's denial of benefits if that decision is "supported by substantial evidence" in the record as a whole and is "based on the application of correct legal standards." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)); *see* 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Carmickle*, 533 F.3d at 1159 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Under this standard, "[w]here the evidence

is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Andrews*, 53 F.3d at 1041). Accordingly, the ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164 (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)).

**III. Analysis**

Wright contends that this Court should reverse the ALJ and award benefits to Wright, or alternatively, that it should remand the matter for additional administrative proceedings. Specifically, Wright challenges the ALJ's decision to credit Dr. Fruchtman's first opinion over his second opinion, a choice Wright contends is dispositive in determining whether Wright should obtain benefits.

Wright's argument begins by noting two correct propositions of law. First, that while ALJs are responsible for resolving conflicts in the medical record, (Doc. 18 at 8 (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989))), an ALJ must explain how it resolves a conflict, (Doc. 18 at 9 (citing Social Security Ruling (SSR) 96-8p. Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34474-01 (July 2, 1996))); *see* 20 C.F.R. § 402.35(b)(1) (stating that Social Security Rulings are "binding on all components of the Social Security Administration" and "represent precedent[ial] final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted). Second, that explained physician opinions are preferred over those expressed in check-box form. (Doc. 18 at 9 (citing *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983))); (Doc. 23 at 3–4 (first citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); and then citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996))).[1]

---

[1] Wright does not appear to challenge the ALJ's decision to credit the check-box form over the narrative form solely due to the nature of the forms. To the extent Wright is leveling such a challenge, the ALJ's reasons for prioritizing the first form over the second, as discussed below, defeat such an argument. *See* 20 C.F.R. § 416.927(c)(3), (4) (describing as important determinations that an opinion has a "better . . . explanation" and is "consistent . . . [with] the record as a whole"); *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form . . . .").

Wright goes on to argue that the ALJ improperly gave more credence to Dr. Fruchtman's first opinion because the ALJ failed to consider Wright's ability to work an entire eight-hour workday. (Doc. 18 at 9–11.) Residual functional capacity is an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," that is, for "8 hours a day, for 5 days a week." Social Security Ruling (SSR) 96-8p. Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34474-01, 34475 (July 2, 1996). Dr. Fruchtman's first opinion, cited by the ALJ, expressly assessed Wright's abilities "on a regular and continuous basis," meaning "8 hours a day, for 5 days a week." AR 2519. Wright seems to contend that the extent of her limitations to work for an extended period of time are better expressed in Dr. Fruchtman's second opinion; however, that does not discount the legitimacy of the ALJ's choice to credit the first opinion over the second opinion, given its determination that the second opinion was internally inconsistent and that the first opinion was more consistent with the record as a whole.

Wright then challenges the propriety of the ALJ's decision to use the clinical findings from the second opinion in choosing to rely more heavily on the first opinion. (Doc. 18 at 11.) Again, Wright argues that the ALJ must assess Wright's capacity to work on a regular and continuing basis. The ALJ, however, merely found that the clinical findings in the second opinion were more consistent with the conclusions set forth in the first opinion. *See* AR 30. While some of the other clinical findings in the second opinion may have suggested that Wright's abilities with her left hand were more limited, it was within the ALJ's province to reconcile the conflicting medical evidence in a reasonable manner.

Wright goes on to challenge the ALJ's use of Wright's activities to determine her residual functional capacity. The ALJ, in deciding that Dr. Fruchtman's first opinion more closely aligned with Wright's daily activities, cited the fact that Wright was "able to perform activities of self-care, prepare simple meals, and provide care for her daughter." AR 30. Wright argues that "an ALJ's reliance on activities of daily living has clear limits

in that the record must meet the threshold for transferability to the work environment." (Doc. 18 at 12 (first citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990); then citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007))). This transferability requirement, however, only applies to cases where an ALJ draws an adverse credibility determination against a claimant in the context of subjective claims regarding the intensity of pain or symptoms. *See Orn*, 495 F3d at 639; *Gonzalez*, 914 F.2d at 1201; *Fair v. Bowen*, 885 F.2d 597, 602–03 (9th Cir. 1989). Rather than making such a claim, Wright is challenging the ALJ's use of Wright's daily activities to reconcile conflicting medical evidence. Accordingly, the ALJ appropriately considered Wright's activities to resolve a conflict in the medical record. *See Magallanes*, 881 F.2d at 756 ("Our cases do not prevent the ALJ from taking into account a claimant's level of activity, along with other probative evidence of disability or lack thereof.").

Wright also claims that the ALJ's understanding of her daily activities misstates the record. (Doc. 18 at 12.) Wright claims that: "she has difficulty dressing, cooking, and caring for her child independently," she has difficulty sleeping, her left hand has become increasingly ineffective, she has difficulty maintaining hygiene, her cooking lasts for 10 minutes at most, she only does dishes and laundry in brief intervals, and that her activities are not inherently bimanual. (Doc. 18 at 12 (citing AR 517, 529–31)). Even assuming that Wright's argument is correct, it does not upset the ALJ's decision to credit Dr. Fruchtman's first opinion over his second opinion, given the internal inconsistencies in the second opinion and the ALJ's determination that the conclusions in the first opinion more closely aligned with the analysis in the second opinion.

Wright's final argument is that the first form did not allow Dr. Fruchtman to provide his full opinion regarding standing and walking. (Doc. 18 at 12–13.) According to Wright, this limitation led the ALJ to conclude that Wright could stand for four hours and walk for four hours each workday. (*Id.*) The first form provided, in a check-box format, that Wright could stand for four hours and walk for four hours in a day. AR 2520. In the second opinion, Dr. Fruchtman checked the box indicating that Wright can

"stand and/or walk" for "[a]t least 2 hours but less than 6 hours in an 8-hour workday." AR 2531. In that opinion, Dr. Fruchtman "[s]pecif[ied] the number of hours" as "4 hours and probably not more than an hour or two at any one time." AR 2531. Given the inconsistencies in the second opinion, and the fact that the first opinion's conclusion accorded with the second opinion's analysis, it was appropriate for the ALJ to give more weight to the first opinion over the second opinion.

**IV. Conclusion**

Ultimately, the responsibility for reconciling conflicting medical evidence lies with the ALJ. The ALJ appropriately shouldered this responsibility in deciding to credit Dr. Fruchtman's first opinion over the second opinion.

Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly and terminate this case.

Dated this 28th day of August, 2018.

James A. Teilborg
Senior United States District Judge